# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREATER NEW YORK MUTUAL | : | CIVIL NO. 1:11-CV-00451 |
| INSURANCE CO. a/s/o R.P., | : | |
| Management, Inc. and New S.P. | : | |
| Assoc., L.P. d/b/a Suburban Park | : | |
| Apartments and as assignee of, Bell | : | |
| Socialization Services, Inc., Anna | : | (Judge Jones) |
| Carson and Steven Sponseller, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA INDEMNITY INS. | : | |
| CO. and THE GLADFELTER | : | |
| AGENCY, INC., | : | |
| Defendants, | : | |
| | : | |
| v. | : | |
| | : | |
| N. CHRISTOPHER MENGES, ESQ. | : | (Magistrate Judge Schwab) |
| SHAWN P. MCLAUGHLIN, ESQ., | : | |
| And MENGES, MCLAUGHLIN & | : | |
| KALASNIK, P.C. | : | |
| Third-Party Defendants. | : | |

## ORDER
March 11, 2014

In this declaratory judgment action, proceeding *via* a third amended complaint, defendant Gladfelter Agency, Inc. ("Gladfelter") moves to overrule objections to its discovery requests relating to the production of documents evidencing the extent of the attorney-client relationship between Bell Socialization Services, Inc. ("Bell") and third-party defendant Menges, McLaughlin & Kalasnik,

P.C. ("MMK").[1]  In refusing to turn over the requested items, MMK and Bell have raised the attorney-client privilege.  Gladfelter, however, argues that Bell waived the privilege. For the following reasons, I will deny Gladfelter's motion.

## I.     __Background.__

Because this Order is intended primarily for review by the parties, I will not recite in detail the claims and factual allegations asserted in this action.  Rather, I will state only that this declaratory judgment action was initiated on March 10, 2011, when the plaintiff, Greater New York Mutual Insurance Co. ("GNY") filed a complaint against Philadelphia Indemnity Insurance Company ("PIIC") and Gladfelter.  *Doc.* 1.  Since then, GNY has filed three amended complaints, the most recent one having been filed on September 20, 2013.  *Doc.* 119.

In pertinent part, GNY's lawsuit continues to include claims against Gladfelter, through a limited assignment from Bell, for negligence and negligent misrepresentation. More precise, GNY seeks judgment against Gladfelter should the Court find that PIIC is not required to provide insurance coverage to Bell, for losses incurred by GNY in separate fires started by two of Bell's placed-residents.

---

[1]     Gladfelter has essentially filed a motion to compel.

Earlier in the litigation, Glatfelter filed a third-party complaint naming MMK as a third-party defendant.[2]   *Doc.* 43.   Pursuant to Court Order, the only remaining claim against MMK is for professional negligence.   *See Doc.* 65. According to Gladfelter, before the two fires, it procured and obtained insurance policies from PIIC in order to provide insurance coverage to Bell.   *Doc.* 43 at ¶ 13. At the time, MMK was also allegedly retained by Bell to provide legal advice and counsel, and to work jointly with Gladfelter, on matters relating to insurance coverage among other things.   *Id.* at ¶ 15.   Gladfelter refers to the relationship between the three parties as a "joint venture."   *Id.* at ¶ 25.

Gladfelter further claims that it corresponded with MMK regarding the procurement of insurance for Bell at the property where the two fires occurred.   *Id.* at ¶ 16.   Specifically, Gladfelter alleges, it corresponded with MMK regarding the leases and the insurance implications of such leases between Bell and its placed-residents.   *Id.* at ¶ 17.   Gladfelter claims that it advised MMK that the language in the leases was drafted in a manner that left Bell vulnerable in a loss created by a

---

[2]      Gladfelter labeled its third-party complaint a "joinder complaint." While such terminology is used in Pennsylvania practice, *see* Pa. R. Civ. P. 2252, in federal practice, a joinder complaint is called a third-party complaint. *See* Fed.R.Civ.P. 7(a)(5) & 14(a). Of course, in federal court, I adhere to federal practice and will refer Gladfelter's pleading as a third-party complaint. *See Kohn v. School Dist. of the City of Harrisburg*, No. 1:11-CV-109, 2012 WL 1598096, at *1 n. 1 (M.D. Pa. May 7, 2012)(Caldwell, J.).

placed-resident, and it suggested additional language that MMK allegedly refused to include. *Id.* at ¶ 18-20, 22-23. According to Gladfelter, had any of the suggested language been included in the leases, Bell would have no uncovered losses. *Id.* at ¶ 21. Given MMK's alleged failure to include the recommended language in the leases, Gladfelter brings a professional negligence claim against MMK, for its alleged breach of the duty of care owed to Bell. *Id.* at ¶¶ 24, 26-29.

On July 12, 2013, Gladfelter filed the motion under review along with a brief in support and relevant exhibits. *Docs.* 91, 92, & 93. Gladfelter contends that it served discovery requests on GNY and MMK seeking information in the form of (1) documents pertaining to the retainer agreement between Bell and MMK, (2) invoices for services rendered, limited to the time-frame relevant to the fire losses, and (3) documents exchanged between Bell and MMK for legal services rendered from January 1, 2002 to the present.[3] *Doc.* 92 at 10; *Docs.* 93-3 to 93-6. According to Gladfelter, such information would demonstrate, in part, "the nature, extent, and type of work MMK performed for Bell, the work they billed for, and whether it included … review of insurance policies and communications with Gladfelter about Bell's insurance." *Id.* at 10. However, in responding to Gladfelter's discovery requests, GNY and MMK objected by raising

---

[3]      Gladfelter also contends that it sent a discovery request for MMK's legal files for Bell. Upon reviewing the discovery requests, however, I do not find such a request.

the attorney-client privilege. *Id.* at 11; *Docs.* 93-7 to 93-10. In addition to preserving the attorney-client privilege, MMK answered the discovery requests, with respect to the legal invoices and retainer agreements, by informing Gladfelter that such information does not exist. *Doc.* 93-10 at 3. Gladfelter continues to argue, though, that the remaining items should be compelled given that the attorney-client privilege was waived in two respects: (1) when Bell shared confidential communications in various forms with Gladfelter; and (2) when Bell placed the relevant legal and insurance transactions at issue in this declaratory judgment action. *Id.* at 11-16.

On July 26, 2013, MMK filed a response to Gladfelter's discovery motion and a corresponding brief in opposition. *Docs.* 94 & 95. According to MMK, Gladfelter's motion should be denied because (1) reliance on communications about Bell's insurance policies occurring after the fire occurred is irrelevant to Gladfelter's remaining claim in its third-party complaint, (2) mere correspondence by an attorney to a third party does not automatically operate as a waiver, and (3) Gladfelter, not Bell, placed the transaction into issue. *See generally, Doc.* 95. Subsequently, on July 26, 2013, Gladfelter filed a reply brief arguing more of the same and discrediting MMK's exhibit. *Doc.* 95. At that time, the motion was ripe for disposition on the merits.

Rather than proceeding to decide the motion on the merits, I chose to hold oral argument. *See Doc.* 137. Accordingly, on November 5, 2013, I heard the parties' oral argument.   Among the parties present, was Bell's independently retained counsel.   Bell, through counsel, asserted that it had not waived the attorney-client privilege with MMK and it is continuing to assert the privilege. *Doc.* 151 at 60.  Furthermore, MMK informed the Court that at some point prior to the hearing it provided Gladfelter with a privilege log putting Gladfelter on notice that no specific retainer agreements exist, no litigation cooperation agreements exist, and the legal invoices do not provide narratives. *Id.* at 57, 59-60.  In the face of this information, I reopened the briefs permitting each party to supplement their arguments. *See Doc.* 91.

On November 25, 2013, Gladfelter informed the Court that it chose not to file a supplemental brief. *Doc.* 146.  Similarly, neither Bell nor MMK filed anything further, and the Court did not hear from GNY on this issue. *See Doc.* 148.  The briefing period having officially closed, the motion is now ripe for disposition on the merits.

## II.    <u>Legal Standard</u>.

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim.…Relevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, this Rule establishes a liberal discovery policy. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

As a discovery mechanism, a party may serve a request on any other party, within the scope of Rule 26(b)(1), to produce any designated documents, electronically stored information, or tangible things. Fed.R.Civ.P. 34(a)(1)(A),(B). If the party served with a request for production fails to produce the designated discovery for inspection, the party requesting discovery may move for an order compelling production. Fed.R.Civ.P. 37(a)(3)(B)(iv). The motion to compel should not be filed until the party requesting discovery has conferred, or attempted to confer, in good faith with the party failing to produce the sought after discovery. Fed.R.Civ.P. 37(a)(1).

Upon the filing of a motion to compel, the movant bears the initial burden of proving the relevance of the requested information. *Morrison v. Philadelphia Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is

7

met, the burden shifts to the nonmoving party.   In the event that the nonmoving party has raised a privilege, (s)he must demonstrate the privilege's existence.   *In re Grand Jury (OO–2H)*, 211 F.Supp.2d 555, 557 (M.D. Pa. 2001).   Because evidentiary privileges contravene "the fundamental principal that the public has a right to every man's evidence," such privileges are to be strictly construed. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (citation omitted).   Thereafter, "[o]nce a party demonstrates the existence of a [privilege] … then the party challenging the [production of the privileged information] bears the burden of demonstrating that a waiver … has occurred."   *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 390 (W.D. Pa. 2005).

In ruling on a party's motion to compel, it has long been held that a District Court's decisions are "committed to [its] sound discretion…." *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974).   Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the court. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir.1983).   This far-reaching discretion extends to rulings by United States

Magistrate Judges on discovery matters. *See Halsey v. Pfeiffer*, No. 09–1138, 2010 WL 3735702, *1 (D.N.J.  Sept.17, 2010)(collecting cases).

## III.   <u>Discussion</u>.

The parties do not dispute the relevance of the information sought by Gladfelter or, surprisingly, that not all of the information sought is protected by the attorney-client privilege. I, therefore, make no specific finding on those matters, but I will presume as much for purposes of deciding this motion.[4]  The parties, instead, focus their arguments on whether the privilege was either expressly or impliedly waived by Bell.  The remainder of this Order, therefore, will be devoted solely to the waiver issue.

### 1.  **The Attorney-Client Privilege and Waiver.**

Rule 501 of the Federal Rules of Evidence provides, in relevant part, as follows:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

---

[4]    To the extent these are disputed, the parties should have brought them to my attention.

F.R.E. 501. Thus, in diversity actions, such as the instant litigation, the law governing evidentiary privileges is supplied by the courts of the state in which the federal court sits. *See, e.g., Rhone–Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994); *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 147 (D.N.J. 1997); *McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co.*, 817 F.Supp. 538, 545 (M.D. Pa. 1993) (in diversity action, party's assertion of attorney-client privilege governed by state law). In accordance with these settled principles, this case shall be governed by Pennsylvania's law on attorney-client privilege.

Pennsylvania law defines the attorney-client privilege by statute as follows:

### § 5928. Confidential communications to attorney

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928. "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). Moreover, the attorney-client privilege is not automatic; rather, it must be invoked successfully by the satisfaction of a four-element test:

> The party invoking [the attorney-client] privilege must initially set forth facts showing that [it] has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts

showing that disclosure will not violate the [privilege], e.g., because the privilege has been waived or because some exception applies…. Four elements must be satisfied in order to invoke successfully the protections of the attorney-client privilege:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 376 (Pa. Super. Ct. 2012), *appeal denied*, 57 A.3d 71 (Pa. 2012)(internal citations and quotation marks omitted).

In elaborating on the scope of the privilege, the Pennsylvania Supreme Court recently held: "[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gilliard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). In reaching its holding, the *Gilliard* Court restated the privilege's historically acknowledged purpose, i.e., to encourage free and open communications between counsel and client that will lead to a

11

trusting and candid disclosure.  *Id.* at 51.  Importantly, what the *Gilliard* Court did not do was disturb the traditional understanding that the client holds the attorney-client privilege.

As mentioned, the parties here do not contest the existence of the attorney-client privilege or whether it was properly invoked; instead, they argue primarily about whether the privilege was expressly or impliedly waived by Bell.[5]

### a.  Express or Direct Waiver.

Gladfelter argues that Bell expressly, or directly, waived the attorney-client privilege by including Gladfelter "in all types of communication regarding insurance and leases" with MMK.  *Doc.* 92 at 13-14.  As recognized by the Third Circuit in *Westinghouse Electric Corp.*, "voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the [attorney-client] privilege."  951 F.2d at 1424 (quoted case omitted). "Thus, once a client has revealed privileged information to a third party, the basic justification for the privilege no longer applies."  *Id.*; *see Nationwide Mutual Ins. Co. v. Fleming*, 992 A.2d 65, 68 (Pa. 2010)(discussing the same).  In this regard, federal courts have held that, under some circumstances, voluntary

---

[5]     The remainder of this Order has no application to Gladfelter's requests for production of invoices and retainer agreements.  As explained by MMK at oral argument, and previously disclosed to Gladfelter, those items do not exist.

disclosure of a communication protected by the attorney-client privilege may result in waiver of the privilege for *all* communications pertaining to the same subject matter ("subject matter waiver").  *E.g., Murray v. Gemplus Int'l, S.A.*, 217 F.R.D. 362, 367 (E.D. Pa. 2003)(emphasis added).[6]

Here, as previously stated, Gladfelter argues that MMK and Bell expressly waived the attorney-client privilege by including it in "all types of communications regarding insurance and leases, including … letters, email, phone calls, and meetings."  *Doc.* 92 at 13-14.   In support, Gladfelter offers the deposition testimony of Peggy Selway ("Selway"), Gladfelter's lead account representative for Bell.  *Doc.* 93-11. In pertinent part, Selway testified that on March 19, 2009, she met with defendant Christopher Menges ("Menges"), an attorney at MMK, and

---

[6]    Although I ultimately conclude that no confidential communications were disclosed, I note that courts have also recognized exceptions to the voluntary waiver rule. For example, a client may allow disclosure to an "agent" assisting the attorney in giving informed legal advice to the client without waiving the privilege. *Westinghouse Electric Corp.*, 951 F.2d at 1424 (citing 8 Wigmore, *Evidence* § 2301 at 583 (McNaughton rev. 1961); McCormick, *Evidence* § 92 at 188); *see also Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984). "[Such an exception is] consistent with the goal underlying the privilege because [this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.  I bring this point up, because MMK raises this very argument, as an alternative, in defense of Bell's privilege. Nevertheless, MMK fails to provide any evidence in support of its contention that Gladfelter, as an insurance broker, was an agent "whose services were necessary for effective representation of [Bell's] interests." *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. 05-3158, 2006 WL 1320067, at *2 (D.N.J. May 12, 2006).  Instead, I was left solely to rely upon MMK's conclusory assertion and Selway's blanket testimony that the two parties worked together, through Bell.

Ike Hileman, Bell's executive director. The purpose of the meeting was to discuss the limits on Bell's insurance policy that would apply to the loss in one of the two fires. *Id.* at 28. Selway testified that during the meeting, Menges disclosed his understanding of Bell's coverage under the insurance policy. *Id.* Selway, however, corrected Menges, who was apparently mistaken, and further testified that she asked him "if a waiver of subrogation would be a good idea to put in the leases." *Id.* Noticeably missing, though, is evidence demonstrating that privileged communications were divulged; instead, absolutely nothing about this evidence equates to the divulgence of confidential information.

Gladfelter next points to a letter sent from Menges to Selway, following their in-person meeting, regarding the insurance coverage available to Bell on its other properties. *Doc.* 93-12 at 1. In the same correspondence, Menges asked Selway whether certain language would be sufficient for purposes of Bell's "hold harmless" and insurance subrogation clauses. *Id.* at 2. But, again, Gladfelter does not point out what confidential information was divulged. Thus, despite the protest that this evidence amounts to a "clear" waiver, it is actually entirely unclear.

In opposition, MMK has filed the affidavit of Hileman, which Gladfelter contends amounts to a waiver in and of itself, *Doc.* 99 at 4-8. In the affidavit, Hileman testifies that before the two fires occurred Bell never sought legal advice from MMK regarding its insurance needs. *Doc.* 94-1 at ¶¶ 2, 4. Instead, Bell

14

looked to Gladfelter to select, review, assess, and provide appropriate insurance products. *Id.* at ¶ 3. Thus, if anything is clear, it is that Hileman's affidavit does not divulge confidential communications. Rather, Hileman merely disavows, in several different ways, that Bell engaged MMK to provide legal advice in connection with its insurance needs. As well, Selway testified at her deposition that she had no reason to dispute the contents of Hileman's affidavit. *Doc.* 93-11 at 51-53. Moreover, as MMK points out, Selway testified during her deposition that she never submitted documents directly to MMK, and she never invited MMK to any meetings to discuss insurance coverage being procured for Bell. *Id.* at 38. Rather, according to Selway, the parties "worked together through the client." *Id.* At the same time, Selway had no personal knowledge that MMK, in fact, met with Bell to discuss the procurement of insurance. *See id.* at 39.

In addition to contending that Hileman's affidavit amounts to an express waiver, Gladfelter also attacks the credibility of the same affidavit. In doing so, Gladfelter provides an email from after the first fire, wherein Bell and Menges sought to engage Selway in a discussion about Bell's insurance coverage. *Doc.* 99-1. As such, it actually appears that MMK might have provided legal advice to Bell about the insurance policies before the second fire occurred, contrary to Hileman's contention that no legal advice was provided before *both* fires had occurred. *See generally,* Doc. 94-1. In that regard, I refuse to accept the Hileman affidavit to

15

support the proposition that Bell did not seek legal advice from MMK for the procurement of insurance.

More troubling to me, however, is that the email appears to include an express waiver of the attorney-client privilege, wherein confidential communications between Menges and Bell were disclosed to Selway by Debbie Splawski, at Bell. *See Doc.* 99-1. Unfortunately Gladfelter not only failed to present this argument, but it also provided no background to the email. Accordingly, I cannot decisively tell whether the exhibit is a series of emails copied onto one page or whether it is one continuous email chain. There are also other unexplained markups on the exhibit that make it difficult for me to determine the document's authenticity. Thus, while there may in fact have been an express waiver, I cannot reach that conclusion based on this limited record. Moreover, just because a single meeting, or several meetings, occurred between Gladfelter and MMK does not necessarily mean that confidential communications were disclosed so as to waive the privilege. I, therefore, am compelled to deny Gladfelter's motion on the grounds that Bell expressly, or directly, waived the attorney-client privilege.

**b. Implied Waiver.**

In the alternative, Gladfelter argues that Bell waived the attorney-client privilege pursuant to the "offensive use" doctrine, otherwise known as "at issue" or "implied" waiver.  Specifically, Gladfelter contends that the lawsuit brought against it by GNY, through a limited assignment from Bell, put the legal advice Bell received from MMK into issue.  In opposition, MMK contends that Bell never affirmatively placed MMK's legal advice in issue; rather, Gladfelter did *via* its third-party complaint.  As such, MMK argues, Bell did not impliedly waive the attorney-client privilege.

Under the "offensive use" doctrine, a party can waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation.  *Rhone*, 32 F.3d at 863.  "In [such a case], the client has made the decision and taken the affirmative step … to place the advice of the attorney in issue. … [B]y placing the advice in issue, the client has opened to examination facts relating to that advice."  *Id.* The attorney-client privilege is not held to be waived, however, by the mere fact of bringing or defending a suit. *Nesselrotte v. Allegheny Energy, Inc.*, CIV. A. 06-01390, 2008 WL 2858401 at *7 (W.D. Pa. July 22, 2008) (citing *Barr Marine Products, Co., Inc. v. Borg-Warner Corp.*, 84 F.R.D. 631, 635 (D.C. Pa. 1979) (citation omitted)).  The Third Circuit

17

has provided the following examples of when a client might impliedly waive the

attorney-client privilege:

> [A] client may waive the privilege as to certain communications
> with a lawyer by filing a malpractice action against the lawyer.
> *See* Wigmore, § 2327, at 638. A defendant may also waive the
> privilege by asserting reliance on the advice of counsel as an
> affirmative defense. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d
> 1156 (9th Cir. 1992) (party's claim that its tax position was
> reasonable because it was based on advice of counsel puts advice
> in issue and waives privilege); *see also, Hunt v. Blackburn*, 128
> U.S. at 470, 9 S.Ct. at 127, (client waives privilege when she
> alleges as a defense that she was misled by counsel). *See
> generally,* E. Cleary, McCormick on Evidence § 93, at 343 (3d
> ed. 1984). In an action for patent infringement, where a party is
> accused of acting willfully, and where that party asserts as an
> essential element of its defense that it relied upon the advice of
> counsel, the party waives the privilege regarding
> communications pertaining to that advice. *Mellon v. Beecham
> Group PLC*, 17 U.S.P.Q.2d 1149, 1151, 1991 WL 16494 (D.N.J.
> 1991); *see also, e.g.*, *W.L. Gore & Associates, Inc. v. Tetratec
> Corp.*, 15 U.S.P.Q.2d 1048, 1051, 1989 WL 144178 (E.D. Pa.
> 1989) (client waived privilege by asserting reliance upon advice
> of counsel as an essential element of his defense).

*Rhone*, 32 F.3d at 863.

Gladfelter argues that *Pappas v. Holloway*, 787 P.2d 30 (Wash. 1990), is the

leading case on implied waiver and on "all fours with the circumstances of this

case." It is neither. *Pappas* has not been cited by one Pennsylvania state court or

any court in the Third Circuit. Further, *Pappas* relies on a fairness analysis

articulated in *Hearn v. Rhay*, 68 F.R.D. (E.D. Wash. 1975), which has been

squarely rejected by our Third Circuit as being of "dubious validity." *Rhone*, 32

F.3d at 864. "While [*Hearn*] dress[es] up [its] analysis with a checklist of factors, [it] appear[s] to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Id.* Additionally, *Pappas*, a case involving a claim by Pappas for attorney's fees and counterclaim by the clients for malpractice, dealt with the application of the implied waiver doctrine against the factual backdrop of multiple attorneys representing the client at various times during the underlying litigation at issue. The timing of such representations and whether they occurred subsequently or concurrently with the underlying matter was of critical importance to the *Pappas* court in deciding which attorneys advice bore on the causation issue and would thus be subject to the implied waiver doctrine.

Further, *Pappas* is inapplicable to this case. This matter does not involve sequential or concurrent attorney-client relationships. Gladfelter never maintained an attorney-client relationship with Bell so as to trigger such an analysis. More importantly, however, Bell, as assignor to GNY, has not placed the legal advice given to it by MMK at issue by initiating this claim for negligence against Gladfelter. Bell, through GNY, has not pursued a legal malpractice claim against

19

MMK in connection with this matter.  It further has not made any allegations, or raised any defenses thus far, that rest on, or disclose, counsel's advice in connection with the procurement of insurance.  Consequently, I find that Bell did not impliedly waive the attorney-client privilege because the legal advice provided by MMK, whatever that may have been, has not affirmatively been placed into issue by the filing of this lawsuit.

## IV.    Order of the Court.

For these reasons, **IT IS ORDERED** that Gladfelter's motion (*Doc.* 91) is **DENIED**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

20